UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MEGAN R. L. BOOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:15-cv-00070-JMS-WGH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Megan L. Booker applied for disability and disability insurance benefits (collectively, "disability benefits") on May 2, 2012, alleging a disability onset date of January 1, 2011. [Filing No. 12-5 at 2.] Her claim was denied initially and on reconsideration, and a hearing was held before Administrative Law Judge William Sampson (the "ALJ") on December 3, 2013. [Filing No. 12-2 at 29-53.] On February 19, 2014, the ALJ issued an opinion concluding that Ms. Booker was not disabled as defined by the Social Security Act. [Filing No. 12-2 at 12-23.] The Appeals Council denied her request for review on December 9, 2014, [Filing No. 12-2 at 4], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Ms. Booker filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

# I.
## STANDARD OF REVIEW[1]

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can

---

[1] Ms. Booker filed the brief supporting her petition for review as a "Motion for Summary Judgment," [Filing No. 18], but the Court will apply the well-established standards for reviewing a social security decision.

> perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

3

## II.
### RELEVANT BACKGROUND

Ms. Booker was 19 years old at the time she filed her disability application. [Filing No. 12-2 at 2.] She dropped out of school in the tenth grade, and is a single mother. [Filing No. 12-2 at 34.] Ms. Booker has held various jobs, but typically for short periods of time. [Filing No. 12-2 at 35-36.] She was involved in a car accident when she was 15 years old, and has had back pain since that time.[2] [Filing No. 12-2 at 18.]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Ms. Booker is not disabled. [Filing No. 12-2 at 23.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Booker meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since January 1, 2011, her alleged onset date. [Filing No. 12-2 at 14.]

- At Step Two of the analysis, the ALJ found that Ms. Booker has the following severe impairments: "degenerative disc disease of the lumbar and cervical spine, chronic obstructive pulmonary disease, bilateral carpal tunnel syndrome, a history of ovarian cysts, and borderline intellectual functioning." [Filing No. 12-2 at 15.]

- At Step Three of the analysis, the ALJ found that Ms. Booker did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 12-2 at 15-17.] The ALJ considered various listings in

---

[2] Both parties provided a detailed description of Ms. Booker's medical history and treatment in their briefs. [Filing No. 19 at 1-9; Filing No. 24 at 2-6.] Because that implicates sensitive and otherwise confidential medical information concerning Ms. Booker, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

making that conclusion, but ultimately found that Ms. Booker did not meet any of them.

[Filing No. 12-2 at 15-17.]

- The ALJ concluded that through the date of last insured, Ms. Booker had the residual functional capacity ("RFC") to do as follows:

    lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. The claimant can frequently, but not constantly, handle and finger bilaterally, she can occasionally climb ramps and stairs, and she can occasionally balance, stoop, kneel, and crouch, but she can never climb ladders, ropes or scaffolds, and she can never crawl. The claimant should avoid concentrated exposure to breathing irritants such as fumes, odors, dusts, and gases, and she should avoid concentrated exposure to hazards such as moving machinery and unprotected heights. The claimant is further limited to simple, routine and repetitive tasks.

    [Filing No. 12-2 at 17-18.]

- At Step Four of the analysis, the ALJ concluded that Ms. Booker had no past relevant work. [Filing No. 12-2 at 22.]

- At Step Five of the analysis, the ALJ concluded that considering Ms. Booker's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. [Filing No. 12-2 at 22.] The ALJ relied on testimony from the vocational expert ("VE") to identify jobs that Ms. Booker could perform, noting that the VE testified that an individual with Ms. Booker's limitations "would be able to perform the requirements of representatives 'light and unskilled' jobs" such as school bus monitor, wire prep machine tender, parking lot attendant, and usher. [Filing No. 12-2 at 23.]

- Based on these findings, the ALJ concluded that Ms. Booker is not disabled as defined by the Social Security Act and, thus, is not entitled to the requested disability benefits. [Filing No. 12-2 at 23.]

Ms. Booker requested that the Appeals Council review the ALJ's decision, but that request was denied on December 9, 2014, [Filing No. 12-2 at 4], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Ms. Booker filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Booker presents three issues on appeal that she contends require this Court to reverse the decision of the ALJ denying her request for disability benefits. First, she contends that the ALJ erred by concluding that she did not have an impairment or combination of impairments that met or medically equaled Listing 12.05C. [Filing No. 19 at 9-14.] Second, Ms. Booker argues that her assigned RFC fails to accommodate her restrictions in social functioning as supported by evidence of record and discounts her testimony of pain because there is no objective evidence of her pain. [Filing No. 19 at 14-16.] Third, Ms. Booker argues that the ALJ did not take her social restrictions into account when he determined the jobs that she can allegedly perform because they all involve interaction with others, despite the evidence of record that she has poor interaction with others. [Filing No. 19 at 16-18.] Because the Court finds that the ALJ committed reversible error with regard to whether Ms. Booker meets or medically equals Listing 12.05C, the Court will begin with that argument.

### A. Listing 12.05C (Intellectual Disability)

Ms. Booker argues that the ALJ erred by finding that she did not meet or medically equal Listing 12.05C because although she had the requisite IQ score, the ALJ concluded that she did not have the necessary deficits in "adaptive functioning." [Filing No. 19 at 9-14.] Ms. Booker emphasizes evidence of emotional disability, poor interactions with peers, and problems with anger control. [Filing No. 19 at 10.] Ms. Booker also points out that her work history is "sporadic

6

at best," which she contends supports her argument that she has deficits in adaptive functioning capable of meeting or medically equalizing Listing 12.05C. [Filing No. 19 at 12-13.]

The Commissioner does not challenge Ms. Booker's qualifying IQ score but contends that the ALJ correctly concluded that Ms. Booker did not have limitations in adaptive functioning sufficient to meet or medically equal Listing 12.05C. [Filing No. 24 at 11.] The Commissioner emphasizes that it is Ms. Booker's burden to show that she meets or medically equals a listing and that she did not do this. [Filing No. 24 at 10-11.] The Commissioner contends that the ALJ adequately considered the evidence of record because he cited Ms. Booker's history of special education classes, her activities of daily living, and anger issues. [Filing No. 24 at 11-14.]

In reply, Ms. Booker emphasizes that the applicable regulations "provide no guidance as to how severe a claimant's deficits in adaptive functioning must be under Listing 12.05." [Filing No. 25 at 3.] Ms. Booker points to evidence that she contends shows her deficits in adaptive functioning, including the nine jobs she held in five years, her difficulty with basic information, and her inability to cope with the challenges of everyday life. [Filing No. 25 at 4.] Finally, Ms. Booker contends that the ALJ should have consulted a medical expert to make a determination regarding her medical equivalency with 12.05. [Filing No. 25 at 7.]

A listing "describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing." *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999) (citing 20 C.F.R. § 404.1525(a)). The Code of Federal Regulations provides that the Social Security Administration "will find that [a claimant's] impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement...." 20 C.F.R. § 416.925(c)(3). Listing 12.05 contains an initial paragraph that lays out the diagnostic description of intellectual

disability plus four separate criteria (paragraphs A through D). *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00. In order to meet Listing 12.05, a claimant must have an impairment that meets one of the four requirements of that Listing. *See Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir. 2007) (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05); *Maggard*, 167 F.3d at 380.

The Seventh Circuit Court of Appeals has summarized the requirements for a finding of intellectual disability under Listing 12.05C as follows: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Adkins*, 226 Fed. Appx. at 605 (citations omitted); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.00(A) ("Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). The Seventh Circuit has also noted that "[o]rdinarily a person with an IQ under 70 and at least one additional impairment that imposes a limitation on ability to work…is automatically deemed to be disabled." *Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014). The term "deficits in adaptive functioning," the second of the four requirements, "denotes inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSMIV–TR)* 42 (4th ed. 2000)).

The Court agrees with Ms. Booker that the ALJ did not adequately explain why he concluded that Ms. Booker did not have "deficits in adaptive functioning" for purposes of Listing

12.05. Twice in the Step Three analysis the ALJ summarily concludes that Ms. Booker "does not show that [she] has any deficits in 'adaptive functioning' initially manifested prior to age 22." [Filing No. 12-2 at 15-16.] The ALJ does not build an adequate logical bridge to this conclusion; instead, it appears that his conclusion is primarily, if not exclusively, based on his opinion that Ms. Booker engaged in a "wide range of activities on a daily basis, including child care, without any apparent limitations." [Filing No. 12-2 at 16.] It is well-established, however, that "an ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time." *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010). Although the ALJ generally acknowledges Ms. Booker's history of "'emotional' disability and learning disability," he downplays those because Ms. Booker "was doing generally well in school until she quit in the 10th grade." [Filing No. 12-2 at 16.] The ALJ does not explain how quitting school despite generally doing well shows no limitation in adaptive functioning, given that the "term denotes inability to cope with the challenges of ordinary everyday life." *Novy*, 497 F.3d at 710. Nor does the ALJ acknowledge that Ms. Booker held nine different jobs for short periods of time in five years, walking off some of them shortly after beginning or leaving others because she "had trouble dealing with the tasks assigned to her." [*See, e.g.*, Filing No. 12-5 at 18-22; Filing No. 12-6 at 64; Filing No. 12-7 at 64.]

Additionally, it appears that the ALJ erroneously thought that Ms. Booker had to have "marked" limitations in adaptive functioning to meet or medically equal Listing 12.05. [Filing No. 12-2 at 17 ("the claimant's own statements undermine any contention that she has a 'marked' limitation in any [of] these areas of functioning").] Although the regulations do not specify how severe a claimant's deficits in adaptive functioning must be under Listing 12.05, "they certainly need not be 'marked' limitations." *Hamilton v. Colvin*, 2015 WL 4729222, at *5 (N.D. Ill. 2015)

9

(collecting cases). Instead, "[a] claimant meets the standard of subsection C by showing that her additional impairment results in a limitation that 'significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c).'" *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)). "A claimant only needs to show that her impairment imposes more than a slight or minimal restriction on her ability to work in order to meet that threshold." *Hamilton*, 2015 WL 4729222, at *5.

For these reasons, the Court must vacate the ALJ's decision denying Ms. Booker benefits and remand to the ALJ to more thoroughly address whether Ms. Booker meets or medically equals Listing 12.05C. For the first time in her reply brief, Ms. Booker argues that the ALJ should have consulted a medical expert to make a determination regarding medical equivalency with 12.05. [Filing No. 25 at 7.] Because the Commissioner did not have a chance to respond to this argument, and the ALJ's decision requires remand for other reasons, the Court will not address that argument further. On remand, however, the ALJ should consider whether consultation with a medical expert regarding Ms. Booker's possible medical equivalence with 12.05 is necessary.

### B. Other Issues

Because the Court has already found that the ALJ committed reversible error, it will summarily address the other two issues Ms. Booker raises to the extent they could impact the case on remand.

Ms. Booker argues that her assigned RFC fails to accommodate her alleged restrictions in social functioning and, because of this, she could not actually perform the jobs the ALJ identified at Step Five because they all involve social interaction. [Filing No. 19 at 14-18.] Ms. Booker is correct that there is some evidence supporting possible restrictions in social functioning in the record, but the ALJ addressed that evidence while crafting her RFC and also relied on a

consultative psychological examination that concluded that Ms. Booker "would have no difficulty managing uncomplicated social interactions found in the workplace including those with coworkers, the general public and supervisors." [Filing No. 12-2 at 20 (citing Filing No. 12-7 at 67).] To the extent that no new evidence of social limitation is presented on remand and the findings of the consultative examiner are not challenged, the Court finds no error in the ALJ's treatment of Ms. Booker's alleged social limitations.

Ms. Booker also argues that the ALJ erroneously discounted her testimony of pain because there is allegedly no objective evidence of pain. [Filing No. 19 at 14-16.] Ms. Booker is correct that an ALJ cannot discount pain testimony simply because it cannot be attributed to objective injuries or illnesses. *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) ("The Administration's own regulation states that 'an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.'") (quoting SSR 96–7p(4)). Moreover, Ms. Booker's medical evidence lends at least some objective support for a possible source of pain—for example, the ALJ acknowledged that four years after a car accident Ms. Booker still had a "mild diffuse disc bulge." [Filing No. 12-2 at 18.] Although he discounted this evidence because there was "no evidence of an extruded disc or spinal stenosis," the ALJ did not explain why Ms. Booker's recognized "mild diffuse disc bulge" could not be the source of her pain. *See Adaire*, 778 F.3d at 687-88 (reversing an ALJ decision for discounting subjective testimony about pain and pointing out that there was actually some objective evidence supporting possible cause of that pain). The ALJ should be sure to address these issues on remand.

11

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Booker benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to **TERMINATE** Ms. Booker's motion. [Filing No. 18.] Final judgment will issue accordingly.

Date: December 30, 2015

                                                  Hon. Jane Magnus-Stinson, Judge
                                                  United States District Court
                                                  Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov